UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSEFINA VANCE,

          Plaintiff,

    v.

KILOLO KIJAKAZI, acting
Commissioner of Social Security,

          Defendant.

No. 1:21-cv-00428-GSA

**ORDER DIRECTING ENTRY OF
JUDGMENT IN FAVOR OF PLAINTIFF
AND AGAINST DEFENDANT
COMMISSIONER OF SOCIAL SECURITY**

**(Doc. 20, 21)**

I.    **Introduction**

Plaintiff Josefina Vance ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1] *See* Docs. 20, 21, 22. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

II.    **Factual and Procedural Background[2]**

On November 1, 2017 Plaintiff applied for supplemental security income alleging disability as of December 1, 2008. The Commissioner denied the application initially on May 14, 2018, and on reconsideration on July 25, 2018. AR 121–33, 134–46. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on July 20, 2020. AR 75–101. On September 1, 2020 the ALJ issued a decision denying Plaintiff's application. AR 13–32. The

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 21 and 22.
[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

1

1

2

Appeals Council denied review on January 7, 2021.  AR 1–7.  Plaintiff filed a complaint in this

Court on March 15, 2021.  Doc. 1.

3

### III.    The Disability Standard

4

5

6

7

8

9

10

11

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits.   "This court may set aside the

Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal

error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180

F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the

record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a

preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

12

13

14

15

16

17

18

19

When performing this analysis, the court must "consider the entire record as a whole and

may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Social*

*Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).   If the

evidence could reasonably support two conclusions, the court "may not substitute its judgment for

that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066

(9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless

error, which exists when it is clear from the record that the ALJ's error was inconsequential to the

ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

20

21

22

23

24

25

26

> To qualify for benefits under the Social Security Act, a plaintiff must establish that
> he or she is unable to engage in substantial gainful activity due to a medically
> determinable physical or mental impairment that has lasted or can be expected to
> last for a continuous period of not less than twelve months.   42 U.S.C. §
> 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . .
> his physical or mental impairment or impairments are of such severity that he is not
> only unable to do his previous work, but cannot, considering his age, education, and
> work experience, engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work.

27

42 U.S.C. §1382c(a)(3)(B).

28

To achieve uniformity in the decision-making process, the Commissioner has established a

1
2
3

sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

4
5
6
7
8
9
10
11
12
13

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

14

### IV.    The ALJ's Decision

15
16
17
18
19
20
21

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of November 1, 2017.  AR 18.  At step two the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, chronic pain from segmental and somatic dysfunction of the thoracic region, cervical spine pain, headaches, and anxiety.  AR 18.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19–20.

22
23
24
25
26

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) with limitations as to postural activities, reaching, exposure to hazardous machinery, unprotected heights, and a limitation to carrying out simple instructions learned within 30 days of on-the-job training.  AR 21–26.

27
28

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a government services drug inspector, the demands of which exceeded her residual functional

1

2   capacity.  AR 26.  At step five, in reliance on the VE's testimony, the ALJ found that, considering

3   her age, education and work experience, jobs existed in sufficient numbers in the national economy

4   that Plaintiff could perform, namely small products assembler, office helper, and mailroom clerk.

5   AR 27.  Accordingly, the ALJ concluded that Plaintiff was not disabled since her application date

    of November 1, 2017.  AR 27.

6
          **V.**     **Issues Presented**
7
          Plaintiff's arguments are limited in scope and detail.  The two arguments span two pages
8
    each and she challenges only the ALJ's treatment of post-car accident evidence and the ALJ's
9
    conclusions regarding Plaintiff's post-car accident RFC.  Br. at 18 ("The ALJ had no post-motor
10
    vehicle accident medical opinion to consider in making her determination as to Plaintiff's residual
11
    functional capacity following the car accident.)."  Accordingly, the Court will focus on the same.
12
          Plaintiff contends the RFC was not supported by substantial evidence for two reasons: 1)
13
    because the ALJ failed to discuss two examinations post-dating her July 24, 2019 car accident; and,
14
    2) because the ALJ did not have access to a physician's opinion post-dating the car accident, an
15
    opinion which was submitted to the Appeal's Council who found it was not reasonably probable
16
    that the opinion would have changed the outcome of the decision.  AR 2.
17
          **A.**     **Examinations post-dating the July 24, 2019 car accident**
18
          **1.**     **Applicable Law**
19
          Before proceeding to step four, the ALJ must first determine the claimant's residual
20
21  functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2

22  (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations"

23  and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1),

24  416.945(a)(1).

25
          "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record
26
    such as medical records, lay evidence and the effects of symptoms, including pain, that are
27
    reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also*
28

1
2
3
4
5
6

20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

7

### 2.      **Analysis**

8
9
10
11
12
13
14
15
16
17
18
19
20

Plaintiff contends the ALJ erred in failing to discuss the examinations conducted by her physician, Dr. Bautista, and her Chiropractor, D.C. Gutierrez, dated January 21, 2020 and March 6, 2020, respectively, both of which were probative of Plaintiff's functionality after the car accident. Br. at 18.   Plaintiff underscores Dr. Bautista's findings including: weakness in Plaintiff's cervical spine, tenderness in all examined regions, a reduced range of motion in her hands, moderate pain with range of motion testing of her thoracic and lumbar spine, right shoulder, both elbows, both hips, and both knees, and severe pain in her left shoulder with range of motion testing.  Br. at 18 (citing AR 561).  She also underscores D.C. Gutierrez's findings including: decreased strength in her hips, knees and ankles; painful range of motion of her hips, knees, and ankles; tenderness and muscle spasms throughout her cervical, thoracic, and lumbar spine at levels L4-L5, across her shoulders, and her buttocks. AR 550–51.

21
22
23
24
25
26
27
28

Defendant responds that, "there is a distinction between what the ALJ must consider and what the ALJ must explain," and quotes *Howard* in which the Ninth Circuit stated that "the ALJ is not required to discuss evidence that is neither significant nor probative." Resp. at 10–11 (quoting *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)).   Defendant emphasizes that the ALJ did reference and cite exhibit B8F multiple times which contained all the records from Omni Family Health (including the examinations from Dr. Bautista and D.C. Gutierrez), though the ALJ did not discuss the content of those two examinations specifically.  Defendant contends

1
2
3
4
5
6

those two examinations contained a mixture of positive and negative findings, and that the negative

findings were neither significant nor probative of Plaintiff's functionality.  As such, Defendant

contends those examinations did not need to be discussed in detail, and that Plaintiff failed to

explain in what respect the ALJ's assessed RFC would be undermined by those examination

findings.  Resp. at 11.

7

The ALJ provided the following description of Plaintiff's car accident and its aftermath:

8
9
10
11
12
13
14

Omni Family Health primary care treatment records from January 21, 2020, indicate that the claimant said her back pain symptoms began six months prior, after her July 2019 car accident (Exhibit B8F/20). This is curious, as the claimant had been reporting back pain to these providers since at least as early as September 2018. On December 31, 2018, she had reported that her back pain was a gradual onset without injury (Exhibit B8F/97), though other places attributed to the July 2019 car accident, another car accident, and an injury on the job in 2008. At Exhibit B8F/68, the claimant said in March 2019 that she was injured on the job three years prior. However, the claimant has also indicated she has not worked since 2008. The claimant testified that she did not know when her worker's compensation occurred or how much money she received.

15
16
17
18
19
20
21
22
23

In any event, the claimant was an unrestrained passenger and ejected from the vehicle in a car accident on July 25, 2019. She was in the hospital for four days, with road rash, a superficial scalp laceration that did not require repair, and a possible deformity of her left wrist and shoulder. X-rays, CT scans, and MRI were all normal (Exhibit B9F/11 – 16, 33 – 52). The claimant had a large partial thickness abrasion injury in her left upper extremity, but normal range of motion and strength with testing. There was no tenderness or swelling. The claimant was intoxicated during the accident, but after she sobered up, she was fully alert and oriented, with grossly normal neurological findings (Exhibit B9F/37). Omni Family Health primary care records from September 26, 2019 (two months after the car accident) indicated that the claimant's gait was compensated, and that she had tenderness in her lumbar and thoracic spine. She was wearing a back brace, and reporting left-sided weakness, as well as bilateral hand weakness. The claimant was fully alert and oriented, as well as appropriate in terms of mood and affect (Exhibit B8F/33).

24
25
26
27
28

On May 28, 2020, the claimant was seen virtually due to the coronavirus pandemic. The purpose of the appointment was for refills of tramadol. The claimant also reported that she wanted paperwork filled out for her Social Security disability hearing. The claimant said she wanted to resume chiropractic care and physical therapy for her low back pain. She was also complaining of increasing left arm pain, as well as headaches. The claimant was referred for chiropractic treatment, and advised to receive massage, apply ice, and perform at home exercises. Follow-up one month later was recommended (Exhibit B8F/2 – 4).

AR 24.

Following this discussion, the ALJ covered the examining and non-examining opinion evidence which pre-dated the car accident. The ALJ rejected that opinion evidence in part, finding less restrictive limitations in some respects but more restrictive limitations in other respects on account of Plaintiff's 2008 on-the-job injury and her July 2019 motor vehicle accident:

> The undersigned is somewhat in agreement with the assessment of the State agency physicians, who indicated that the consultative physician relied too heavily on the claimant's subjective complaints.
>
> That being said, the claimant reports on-the-job injury to her back in 2008, and there is the July 2019 motor vehicle accident. As a result, the undersigned has reduced the claimant to light exertion despite the lack of objective evidence.

AR 26.

Thus, the ALJ did contemplate that Plaintiff's July 2019 car accident warranted the inclusion of limitations in the RFC that would not otherwise have been warranted given the purported lack of objective evidence. However, the decision reveals little about what limitations she believed the post-accident records showed on balance, particularly considering she omitted discussion of the two examinations Plaintiff underscores from January 21, 2020 and March 6, 2020.

The ALJ's assessed RFC notably included sitting, standing and walking six hours in an eight-hour day. AR 21. Although there are no objective findings directly on point, Dr. Bautista did note moderate pain with range of motion in knees, hips, and lumbar spine, and D.C. Gutierrez similarly noted painful range of motion and decreased strength in hips, knees and ankles. AR 551, 561. Moreover, these findings were reasonably consistent in some respects with the September 26, 2019 examination the ALJ did discuss which noted compensated gait, reported left sided weakness, and tenderness in thoracic and lumbar regions. To the extent the ALJ found that the September 26, 2019 examination findings were insufficient to warrant any sitting, standing and

1
2
3

walking restrictions, the pertinent findings from the January 2020 and March 2020 examinations

may have suggested otherwise.

4
5
6
7
8
9
10
11
12
13
14
15
16
17

Additionally, the ALJ found Plaintiff could frequently reach overhead bilaterally, though

Dr. Bautista noted cervical spine weakness, severely painful left shoulder ROM and moderately

painful right shoulder ROM.  AR 561.  The ALJ assessed no handling or fingering limitations,

though Dr. Bautista noted bilateral hand tenderness and mild to moderate ROM deficits.  *Id.*

Defendant is correct that these examinations did not necessarily mandate the inclusion of stricter

limitations than the ALJ included in the RFC.  Nevertheless, those examinations were significantly

probative of Plaintiff's functional capacities as to sitting, standing, walking, overhead reaching,

handling and fingering.  As such, the ALJ was required to discuss the same before reaching her

conclusion. *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (The

ALJ "need not discuss all evidence presented" but must explain why "significant probative

evidence has been rejected."); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.

2003) ("the ALJ is not required to discuss evidence that is neither significant nor probative.").

18
19
20
21
22
23
24
25
26
27

Defendant also underscores the negative imaging findings during Plaintiff's hospital

admission and negative contemporaneous findings as to left shoulder range of motion without

tenderness or swelling, as noted by the ALJ in the above quoted paragraph.  However, the Court

cannot intuit that the ALJ found those records more probative of Plaintiff's functionality than the

January and March 2020 examinations because, again, the ALJ did not discuss the content of those

subsequent examinations.  *See  Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226–27 (9th Cir. 2009)

("Long-standing principles of administrative law require us to review the ALJ's decision based on

the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to

intuit what the adjudicator may have been thinking.").

28

1
2
3
4
5
6
7
8
9
10
11

That omission is notable for additional reasons.  First the records postdating Plaintiff's car accident were not particularly voluminous.  Second the ALJ did reference the January 2020 examination (as quoted above) but solely to illustrate that Plaintiff gave inconsistent responses as to the onset date of her back pain.  The ALJ did not discuss any of the clinical findings therein. Finally, the ALJ did discuss a May 2020 virtual visit in detail, a visit which was much less probative of Plaintiff's physical functionality than the two physical examinations contained in the same exhibit.  This suggests the ALJ's omission of those physical examinations from her discussion was perhaps inadvertent, or at least not particularly well reasoned.  In any event, that omission was harmful error for the reasons explained above.

12

**B.      Dr. Bautista's Opinion Submitted to the Appeal's Council**

13

**1.      Applicable Law**

14
15
16
17
18
19

The Social Security Act grants district court's jurisdiction to review only final decisions of the Commissioner.  42 U.S.C. § 405(g); *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).  An Appeals Council denial of a request for review is a non-final agency action not subject to judicial review because when review is denied, the ALJ's decision becomes the final decision of the Commissioner. *Taylor v. Commissioner of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

20
21
22
23

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case.  20 C.F.R. § 416.1435(a).  The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

24
25
26
27
28

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision.  *Brewes v. Comm'r of Soc. Sec. Admin*., 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5).  Evidence is material if it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility"

1
2
3

that the new evidence would have changed the outcome.  *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

4

### 2.    Analysis

5
6
7

After the ALJ issued the decision, Plaintiff submitted an opinion (a Physical Medical Source Statement) to the Appeals Council from Dr. Bautista dated October 21, 2020.  AR 33–36.  The Appeal's Council denied review.

8
9
10
11
12
13
14
15

Defendant contends Plaintiff did not specifically raise any issue regarding the Appeal's Council's handling of the newly submitted evidence.  Resp. at 12.  Plaintiff noted that the opinion was submitted to the Appeal's Council after the ALJ's decision, that the appeals council denied review and then went on to argue that the opinion was well supported and inconsistent with the RFC.  Br. at 19–20.  Plaintiff focused on the agency regulations establishing that all medical opinions must be considered, and the regulatory factors that impact the persuasiveness of opinions. *Id.*

16
17
18
19
20

Although Plaintiff did not couch her argument in terms of the two-pronged "new and material evidence" legal standard as set forth above, nor did she specifically take issue with the Appeal's Council's handling of the newly submitted evidence, it was reasonably clear that this was her intention.

21
22
23
24
25
26
27

Moreover, the standard of review as quoted above is only subtlety distinct from the standard of review that would govern an ALJ's review of the opinion in the first instance.  If a medical opinion presented to the ALJ is sufficiently probative of the RFC and sufficiently supportable as to the limitations it identified (as Plaintiff argues Dr. Bautista's was), the ALJ would have to incorporate the same or provide specific reasoning for rejecting it.  Likewise, an opinion meeting that description, but post-dating the ALJ's opinion, would qualify as new and material evidence as

28

1
2
3

it would bear directly and substantially on the matter at issue and present a reasonably likelihood

that the outcome would be different.

4

Dr. Bautista identified diagnoses of chronic pain, depression and anxiety.  AR 33.  He

5

identified clinical findings including bilateral motor weakness of the lower and upper extremities,

6

numbness and tingling in digits.  AR 34.  He opined she could walk 4 blocks without rest, sit 30

7

consecutive minutes, stand 5 consecutive minutes, sit less than  2 hours in a workday, stand about

8
9

2 hours in a workday, needed a sit/stand option, could rarely lift less than 10 pounds, could never

lift more than 10 pounds, and could never twist, stoop, or crouch.  AR 34–35.

10
11

The first issue is whether the opinion bears directly and substantially on the matter in

12

dispute.  The matter in dispute is Plaintiff's physical RFC, which is precisely what the opinion

13

addresses.  Defendant presents no argument to the contrary.  More specifically, the matter in dispute

14

as characterized by Plaintiff is her post accident RFC, insofar as she only challenges the agency's

15

treatment of post-accident evidence.  Plaintiff addresses none of the pre-accident evidence nor does

16

she argue that the ALJ's conclusion concerning the same were erroneous.  Rather, Plaintiff's

17
18

argument is predicated on the idea that the car accident was a novel intervening event raising a

19

reasonable likelihood of more serious limitations than suggested by the pre-accident evidence, and

20

that the evidence post-dating the accident therefore required specific consideration.  In that sense,

21

the argument may not be entirely applicable to Dr. Bautista's opinion, in that Dr. Bautista opined

22

that the onset date of his identified limitations was "12 years," suggesting he did not distinguish

23
24

between her functionality before and after the car accident.   Nevertheless, it would seem

25

incongruous to remand the matter for consideration of Dr. Bautista's post-accident examination

26

and omit his subsequent opinion.

27

The second issue is whether there is a reasonably probability that the opinion would have

28

changed the outcome.  On this point, Defendant contends the opinion would not have changed the

11

outcome as it is an extreme opinion wholly unsupported by the record.  Defendant goes on to cite

pre and post-accident evidence including negative imaging findings, full range of motion, negative

straight leg raises, normal reflexes, normal sensation, normal gait, and denial of any lower extremity

weakness.  Resp. at 12.

Defendant notes the negative imaging findings following the car accident.  However, given

the apparent severity of the car accident (during which Plaintiff was ejected from the vehicle), it is

not unreasonable to expect that Plaintiff would have lingering symptoms, even if they were not

unexplainable by imaging alone.

As a counterpoint to Defendant's cited records showing no gait abnormalities and no lower

extremity weakness, the post-accident examination dated September 26, 2019 did note

compensated gate and left-sided weakness.  AR 570.  Similarly, the January 2020 and March 2020

examinations discussed above noted painful lower extremity range of motion and weakness.  AR

551, 561.[3]

Though Dr. Bautista's opinion may not have been defensible in every respect, it was

reasonably consistent with clinical evidence in at least some respects (such as standing and walking

capacities) particularly following the car accident.  In those respects, the opinion could serve to

buttress that clinical evidence which, standing alone, might have been insufficient to justify

additional limitations.

**VI.    Conclusion and Remand for Further Proceedings**

The ALJ erred in failing to discuss the examinations conducted by Dr. Bautista and D.C.

Gutierrez on January 21, 2020 and March 6, 2020, respectively.  Moreover, given the limited

---

[3] It is axiomatic that, when the evidence reasonably supports two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  That proposition is inapplicable to the post-accident evidence here, however.  This is not a case where the ALJ balanced the conflicting evidence and reached a conclusion about the same.  Rather, she omitted discussion of some post-accident evidence suggestive of limitations.  As to the post-accident evidence the ALJ did discuss, the ALJ's decision contains no conclusions to which the court could defer.

amount of post-accident evidence, the addition of Dr. Bautista's opinion arguably tips the scales in favor of stricter limitations.  Accordingly, there is a reasonably probability that the opinion would have changed the outcome.  Remand is therefore appropriate for the ALJ to consider those two examinations and Dr. Bautista's opinion, and to reach a reasoned conclusion whether that evidence warrants a different RFC formulation following the date of Plaintiff's July 24, 2019 car accident.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

## VII.   Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Josefina Vance, and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **April 22, 2022**                    **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE